# EXHIBIT B

# Employment Agreement

THIS CONTRACT AGREEMENT ("Agreement"), effective 15 January 2018, <u>and amended on September 10, 2018</u> by and between La Clinica del Pueblo, ("LCDP") and Margo Brace, LCSW, ("Brace")

WHEREAS, LCDP is a federally qualified community health care center which is a tax-exempt organization under Section 501 (c) (3) of the Internal Revenue Code located in Tierra Amarilla, New Mexico, in Rio Arriba County, which provides primary health care services to the community; and

WHEREAS, LCDP requires the professional medical, dental and behavioral health services of qualified and licensed practitioners to provide services to patients of LCDP; and

WHEREAS, Brace is qualified and licensed to practice Social Work services in New Mexico and will become and remain during this Agreement; and

WHEREAS, LCDP wishes to contract Brace to provide professional Social Work ("Services") at LCDP, other sites operated by LCDP (the "Practice Sites") and at such other locations as the parties may agree, from time to time; and

WHEREAS, Brace wishes to be contracted by LCDP to provide such Services at LCDP, Practice Sites and such other locations as the parties may agree from time to time, in accordance with the provisions hereinafter set forth.

NOW THEREFORE, in consideration of the mutual covenants herein, and each intending to be legally bound, the parties hereto agree as follows:

1. <u>Employment.</u>
   (a) LCDP agrees to contract Brace for ~~(16 hours per month)~~15 hours per week and Brace agrees to be contracted by LCDP according to the terms and conditions provided herein.
   (b) In performing the services contemplated hereunder, LCDP and Brace agree that Brace is acting as a contractor of LCDP.
   (c) Brace understands the Licensed Clinical Social Worker position is a ~~16 hour per month~~15 hours per week position.
   (d) LCDP agrees that Brace will not be seeing clients, until Brace is fully credentialed with New Mexico Medicare.

2. <u>Licensing/Behavioral Staff.</u>
   As a condition of Brace initial and continued contract, Brace shall:
   (a) remain in good standing as a member of the New Mexico Board of Social Work Practice.
   (b) be Board eligible or Board certified in the specialty of Licensed Clinical Social Work;
   (c) participate as a provider in the Medicare and Medicaid programs, and other such third party payment programs in which LCDP may require from time to time;
   (d) observe and comply with LCDP quality standards and programs, utilization review programs, policies and procedures, rules and regulations, and other standards as required by LCDP, including, without limitation any corporate compliance plan, as may be adopted or

amended from time to time; and

    (e)   not be a sanctioned provider as that term is defined in Exhibit A attached hereto.

    (f)   maintains and assists with updates on the credentialing process.

3. <u>Provider Responsibilities.</u>

    (a)   Brace shall provide services for sixteen (16) hours per month 15 hours per week for LCDP and shall be totally responsible for the manner and method by which services are provided to patients. Brace will provide care within the scope of her licensure to practice Social Work services and privileges granted in accordance with the policies of LCDP.

    (b)   Brace shall work such hours and days as reasonably required by LCDP and mutually agreed upon by both parties. These hours and days may be subject to change from time to time depending on the needs of LCDP. LCDP is aware of Brace's other employment, and it is understood, that Brace will work her (16) hours accordingly.

    (c)   Brace agrees to begin seeing clients, once fully credentialed with New Mexico Medicare.

    (d)   Brace is expected to average one (1) billable patient per hour, with a goal of two (2) billable patients per hour, and it is understood that Brace will make every effort to recruit new patients and encourage ongoing patients to attend regular counseling sessions consistent with agreed upon treatment plans.

    (e)   Brace shall complete patient charting and lock patient notes for billing purposes within five (5) days from date of service.

    (f)   Brace shall work closely with physicians, mid-levels, non-physician practitioners, dental staff, and staff who provide patient care services at LCDP.

    (g)   Brace shall abide by all applicable LCDP rules and regulations, Policies and Procedures and Principals of Practice.

    (h)   Brace shall use such space, equipment; desktop, laptop, printers, supplies and services solely to fulfill Brace's obligations under this Agreement and strictly for LCDP business only.

    (i)   Brace shall provide such other support to LCDP as reasonably required by LCDP. This includes annual meetings, fundraisers and any other functions LCDP provides.

    (j)   Brace shall assure that all duties and services provided hereunder are performed in accordance with any and all standards, rulings or regulations of the United States Department of Health and Human Services, the New Mexico Department of Health or any other federal, state or local authority having jurisdiction over the performance of services hereunder.

4. <u>LCDP Responsibilities.</u>

    (a)   <u>Space and Equipment. LCDP</u> shall provide Brace with mutually agreed upon suitable office space, equipment, desktop, laptop, printers and supplies as may be appropriate for Brace to perform services hereunder and shall provide customary maintenance of such office space, equipment and supplies. LCDP shall furnish services to Brace, including, but not limited to utilities, telephone, and computer with internet access, housekeeping, and record keeping services.

    (b)   <u>Remote Access. LCDP</u> shall provide Brace with Remote Access to LCDP network for purposes of conducting LCDP business.

    (c)   <u>Non-physician Personnel. LCDP</u> shall provide appropriate types and numbers of personnel to assist Brace in the provision of services hereunder.

5. <u>Term and Renewal.</u> Subject to Section 9 hereof, this Agreement shall be for a period of one (1) year.

6. <u>Compensation.</u> LCDP will pay Brace, $65.00 per hour, up to ~~sixteen (16) hours per month~~fifteen(15) hours per week. Additional hours must be approved in writing by the Executive Director. LCDP will pay gross receipts taxes for Brace at the Village of Chama rate of 8.1875%. Brace shall submit an invoice to LCDP at the end of each month, to include base payment and gross receipts taxes.

7. <u>Fringe Benefits</u>: LCDP shall maintain in force during the term of the contract and any renewal hereof, for Brace's professional liability insurance in a form and in amounts not less than those required by the State of New Mexico standards, as amended, and as may be in force from time to time.

8. <u>Records and Billing.</u>
    (a) <u>Clinical and Financial Records.</u> All clinical and financial records pertaining to patients treated by Brace within the scope of Brace's contract hereunder, including but not limited to charts, x-rays, clinical reports, fees, records of billings and payment of fees and all personnel records pertaining to compensation and expenses of Brace within the scope of Brace's contract, shall at all times be the property of LCDP, Practice Sites or such other locations as the parties may agree from time to time, as applicable.
    (b) <u>Billing and Collection Procedures.</u> To the extent permitted by third party payment programs, LCDP shall bill, collect and retain amounts received for all services performed by Brace hereunder, including but not limited to Brace' clinical services, chart review activities, and professional witness activities. In the event applicable third party payment programs or regulations require any or all services performed by Brace to be billed in the name of or on behalf of Brace, Brace hereby designates, authorizes and appoints LCDP, and grants LCDP a power of attorney, to bill on behalf of Brace for all such services performed by Brace and to obtain provider number(s) on behalf of Brace to facilitate such billing.
    (c) <u>Charges.</u> The schedule of charges and policies relative to any courtesy allowances there from, for all services performed by Brace shall be determined by LCDP.
    (d) <u>Review of Records.</u> During normal business hours and as mutually agreed upon by Brace and LCDP, Brace shall have the right to review the records of billings and collections for services performed by Brace.
    (e) <u>Third Party Payment Programs.</u> Brace hereby agrees to participate in third party payment programs which may be in effect due to contractual agreements entered into by the LCDP.
    (f) <u>Billing.</u> Brace shall be responsible for coding all services rendered by Brace in conformity with all billing laws, rules, regulations and the - requirements of third-party payors and shall indemnify and hold LCDP harmless from and against any liability of any kind with regard to billing errors of Brace.

9. <u>Termination.</u>
    (a) <u>Termination for Breach.</u> Upon breach by either party of their obligations under this Agreement, the other party may terminate the Agreement if the breach remains uncured to

the reasonable satisfaction of the non-breaching party for more than 30 days after the non-breaching party gives written notice of such breach.

(b) <u>Termination by either party.</u> Notwithstanding the foregoing, this Agreement may be terminated without cause by either party with written notice at least 30 days prior to the termination date.

    (1)  Brace fails to satisfy any or all of the obligations set forth in Section 2 of this Agreement; or

    (2)  Brace is guilty (as determined by LCDP) of any conduct tending to injure the reputation of LCDP. Such conduct shall mean violations of criminal laws or professional ethics. Termination shall not occur before Brace is afforded the opportunity of a hearing before the Executive Director, which decision of the Executive Director shall be conclusive.

    (3)  Upon the death or Brace's permanent disability which prevents Brace from performing the essential functions of Brace's employment after reasonable accommodation has been made.

    (4)  LCDP is no longer in need of Brace's services.

    (5)  Brace is no longer interested in providing services for LCDP.

(c) <u>Termination for Change in Law.</u> Either party may terminate this Agreement upon 30 days written notice to the other in the event that there is a change in the Medicare or Medicaid Acts, regulations or general instructions (or application thereof), the adoption of new legislation, or a change in any third party payor reimbursement system, any of which materially effects the reimbursement which LCDP may receive for Brace's services or the implementation of this Agreement. Prior to such termination, however, the parties agree that they will negotiate in good faith to amend this Agreement in order to delete such provision(s) or develop replacement provision(s) and will terminate this Agreement if they are unable to agree upon such amendments within the 30-day notice period.

(d) <u>Termination Without Cause.</u> Notwithstanding the foregoing, this Agreement may be terminated without cause by either party giving prior written notice to the other party at least 30 days before the end of the term then in effect.

10. <u>Confidential Information.</u> In the course of Brace providing services hereunder, Brace may acquire valuable proprietary data and other confidential information with respect to LCDP's activities, including but not limited to: LCDP's business and financial methods and practices, pricing and marketing techniques, file or database material, computer programs, lists of LCDP's patients, patients record cards, patient files, data on Center's suppliers, and similar information relating to LCDP's current or future affiliates (collectively, "Confidential Information"). Brace agrees to keep confidential and not use or disclose to others during the term of this Agreement or at any time thereafter except as expressly agreed in writing by LCDP or as required by law, any confidential information the use or disclosure of which might reasonably be construed to be contrary to LCDP's best interests.

11. <u>Authority to Bind LCDP.</u>  Brace is not authorized to make any disbursements, to make any purchases or to incur any liabilities on behalf of LCDP or to otherwise obligate LCDP in any manner whatsoever.

12. General Provisions.

(a) Assignment. Brace shall not assign, sell or transfer this Agreement, Brace's obligations hereunder or any interest herein without the prior written consent of LCDP. LCDP may assign this Agreement in whole or in part to any affiliated organization or to any entity which is the successor in interest to substantially all of the assets of LCDP through acquisition, sale, merger, transfer, consolidation or otherwise.

(b) Governing Law. This Agreement shall be deemed to have been made and shall be construed and enforced in accordance with the laws of the State of New Mexico and venue for any legal action brought under or pursuant to this Agreement shall be in Rio Arriba County, New Mexico.

(c) Severability. If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of the Agreement shall be valid and enforceable to the fullest extent permitted by law.

(d) Integrated Agreement. This Agreement and any Exhibits hereto constitutes the entire understanding and agreement between the parties concerning the subject matter hereof. This Agreement supersedes all prior written or oral agreements or understandings existing between the parties concerning the subject matter hereof.

(e) Entire Agreement. This Agreement constitutes the entire agreement between LCDP and Brace, and any prior understanding or representation of any kind preceding the date of this Agreement shall not be binding upon either party, except to the extent it is incorporated into this Agreement.

(f) Waivers and Amendments. No waiver of any term, provision or condition of this Agreement, whether by conduct or otherwise, in anyone or more instances, shall be deemed to be or construed as a further and continuing waiver of any such term, provision or condition of this Agreement. No amendment to any provision of the Agreement shall be effective unless in writing and signed by each party.

(g) Modifications. No modifications of this Agreement or additional obligations assumed by either party in connection with this Agreement shall be valid unless in writing and executed by each party or an authorized representative.

(h) Notices. Written notices to be given hereunder shall be sent by registered or certified mail, return receipt requested, by hand delivery, or by overnight delivery to the address set forth below.

1. If to LCDP:
Darren DeYapp, Executive Director
P.O. Box 250
Tierra Amarilla, NM 87575

2. If to Practitioner:
Margo Brace, LCSW
P.O. Box 204
Chama, NM 87520

All notices called for hereunder shall be deemed to have been given when mailed. Any party may change the address at which notice is required to be given hereunder by giving notice in accordance with the provisions hereof.

(i) <u>Section Headlines.</u> The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

(j) <u>Further Assurances.</u> The parties agree to execute such other documents as may be required to implement the terms and provisions and fulfill the intent of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement this day

_____.

_____     11-27-18
Margo Brace, LCSW                Date:

_____     11/27/18
Darren DeYapp, Executive Director   Date: